# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## MIAMI DIVISION

Case No. 18-20394-CIV-Scola/Torres

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DEREK LEWIS and JOEY NEIMAN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| COMMUNITY HEALTH SYSTEMS, INC., et al., | ) ) ) ) |
| Defendants. | ) ) |

## HOSPITAL DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS RELATORS' FIRST AMENDED COMPLAINT

LASH & GOLDBERG LLP
Martin B. Goldberg
Florida Bar No. 0827029
Daryl L. Saylor
Florida Bar No. 100376
100 Southeast 2nd Street, Suite 1200
Miami, FL 33131-2158
Telephone: (305) 347-4040
Facsimile: (305) 347-4050

ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
Michael L. Waldman (*pro hac vice*)
Brandon L. Arnold (*pro hac vice*)
Lauren M. Cassady (*pro hac vice*)
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510

*Counsel for Hospital Defendants*

## **TABLE OF CONTENTS**

                                                                                                                               **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................1

I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD AGAINST
        THE HOSPITAL DEFENDANTS ........................................................................2

        A.      Relators have not pled their fraud allegations against each Hospital
                Defendants with sufficient particularity ..............................................................2

        B.      Relators have not alleged any facts to support a plausible inference of
                fraudulent intent for each Hospital Defendant .....................................................5

        C.      Relators' conclusory assertions of a wheel conspiracy-like fraud do not
                excuse their failure to plead fraud with particularity ...........................................7

CONCLUSION ..................................................................................................................10

Case No. 18-20394-CIV-Scola/Torres

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                        **Page(s)**

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
   482 F.3d 1309 (11th Cir. 2007)..................................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................5, 8

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F. 3d 1364 (11th Cir. 1997)..................................................................................................7

*Corsello v. Lincare, Inc.*,
   428 F.3d 1008 (11th Cir. 2005)...............................................................................................2, 8

*O'Brien v. Nat'l Prop. Analysts Partners*,
   936 F.2d 674, (2d Cir. 1991) ......................................................................................................5

*Ryan v. Salisbury*,
   2019 WL 2121518 (D. Haw. May 14, 2019).............................................................................9

*United States v. Chandler*,
   388 F.3d 796 (11th Cir. 2004) ....................................................................................................9

*United States v. Choudhry*,
   2016 WL 7228760 (M.D. Fla. Oct. 11, 2016) ........................................................................7, 8

*United States v. Kaman Precision Products, Inc.*,
   2010 WL 11626636 (M.D. Fla. Apr. 19, 2010).........................................................................2

*United States ex rel. Bledsoe v. Community Health Systems, Inc.*,
   501 F.3d 493 (6th Cir. 2007) ......................................................................................................2

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
   290 F.3d 1301 (11th Cir. 2002)..................................................................................................3

*United States ex rel. Graves v. Plaza Med. Ctrs. Corp.*,
   2014 WL 5040284 (S.D. Fla. Oct. 8, 2014) ...............................................................................7

*United States ex rel. Jallali v. Sun Healthcare Grp.*,
   2015 WL 10687577 (S.D. Fla. Sept. 17, 2015) .........................................................................7

*United States ex rel. Loveland v. Medco Health Sols., Inc.*,
   2010 WL 11444153 (S.D. Fla. July 21, 2010)...........................................................................8

*United States ex rel. McFarland v. Fla. Pharmacy Sols.*,
    358 F. Supp. 3d 1316 (M.D. Fla. 2017) ...................................................................... 7, 8

*United States ex rel. Osheroff v. Tenet Healthcare Corp.*,
    2012 WL 2871264 (S.D. Fla. July 12, 2012) .................................................................. 3

*United States ex rel. Silingo v. Wellpoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) ................................................................................. 7, 8, 9

*United States ex rel. Stepe v. RS Compounding LLC*,
    304 F. Supp. 3d 1216 (M.D. Fla. 2018) ......................................................................... 8

*Urquilla-Diaz v. Kaplan Univ.*,
    780 F.3d 1039 (11th Cir. 2015) .................................................................................. 2, 5

*Viera v. BASF Catalysts LLC*,
    2016 WL 1394333 (M.D. Fla. Apr. 8, 2016) .................................................................. 5

*Weiland v. Palm Beach Cty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ...................................................................................... 7

**Statutes, Regulations, and Rules**

18 U.S.C. §§ 1963-1968 ............................................................................................................. 7

31 U.S.C. §3729 ..................................................................................................................... 5, 6

45 C.F.R. § 170.314 .................................................................................................................... 4

42 C.F.R. § 495.6 ........................................................................................................................ 4

Fed. R. of Civ. P. 8 .................................................................................................................. 6, 7

Fed. R. of Civ. P. 9 ............................................................................................................. *passim*

# INTRODUCTION

Given that the overwhelming majority of the Hospital Defendants[1] appear only in the case caption and are nowhere mentioned in the body of Relators' First Amended Complaint ("Complaint" or "FAC"), it is hardly surprising that the individual hospitals are discussed only in passing in Relators' Opposition brief. Focused on the alleged conduct of Medhost and the Community Health Systems corporate entities, Relators do not even try to allege the actions of each of the Hospital Defendants undertaken in furtherance of the alleged fraud. Nor do Relators make any effort to allege facts from which wrongful intent on the part of each of the Hospital Defendants could be plausibly inferred.

Instead, strikingly, Relators assert repeatedly and emphatically that "decisions were not made by individual hospital administrators," Opp. 4, and that the selection and implementation of certified EHR technology at each of the hospitals was "centralized at the CHS corporate level." *Id.* at 24. In other words, Relators concede that the alleged misconduct was engaged in by the other defendants—Medhost, CHSI and CHSPSC—and not by the Hospital Defendants. This should end the case against the Hospital Defendants.

Relators nevertheless try to argue that by conclusorily asserting a "wheel conspiracy-like fraud" they are somehow exempt from the requirement to plead fraud with particularity against the Hospital Defendants. *See id.* at 38. They are not. Controlling Eleventh Circuit precedent holds such group pleading to be impermissible, and the different circumstances of the various Hospital Defendants makes the requirement of pleading fraud with particularity as to each Hospital Defendant especially appropriate and necessary here.

---

[1] A full list of the "Hospital Defendants" is provided at Appendix A hereto.

## I. THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD AGAINST THE HOSPITAL DEFENDANTS

### A. <u>Relators have not pled their fraud allegations against each Hospital Defendant with sufficient particularity</u>

Relators concede that to satisfy Rule 9(b), they must plead the who, what, where, when, and how of the fraudulent submissions to the government. Opp. 28; *see also Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). But there is no attempt in the Opposition brief to show that Relators can satisfy that standard. The Opposition does not attempt to go hospital by hospital to specify which statement in the attestation of the particular hospital is false. It lacks any explanation of how or why any statement in an individual hospital's attestation is false. And it fails to identify which employees at each of the hospitals submitted the false attestations or which employees at each of the hospitals knew the hospital's attestations were not accurate.[2] The Complaint is silent as to the vast majority of the Hospital Defendants (besides naming them as defendants), and the Opposition brief maintains that silence.

The closest that Relators come to making allegations against the Hospital Defendants is to reference Exhibit B to the Complaint. *See* Opp. 29-32. Yet this bare chart cannot satisfy Rule 9(b)'s high bar. Listing every attestation and checking a few boxes is no substitute for providing the who, what, where, when and how of the alleged fraudulent submission. The Relators' chart provides no such information, failing to identify who made the false submission or what was false about it. Putting a check mark by a broad category does not tell a particular Hospital Defendant

---

[2] Relying on *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, Relators argue that they were not "required to identify the specific defendant employees who participated in the fraud." Opp. 40-41 (citing 501 F.3d 493, 507 (6th Cir. 2007)). That misreads the *Bledsoe* decision. There, the court acknowledged that the identity of specific employees was certainly "relevant" to the Rule 9(b) analysis but ultimately found that it was not "indispensable" where relators had otherwise pled with particularity against the relevant corporate entities. 501 F.3d at 506-07. And *United States v. Kaman Precision Products, Inc.* is even further afield because in that case the government did, in fact, allege wrongful conduct by specific employees—just not the particular employee that submitted the claims. *See* 2010 WL 11626636 at *5 (M.D. Fla. Apr. 19, 2010). But here, Relators have not pled that either any of the Hospital Defendants or any of their employees did *anything*. *Bledsoe* and *Kaman* therefore offer them no help in avoiding dismissal.

2

what it did wrong and why it is accused of fraud. Even the cases cited by Relators acknowledge that it is not enough merely to identify "distinct claims, who made them,[3] [and] the dates they were made"; the plaintiff must also allege "*how they were misleading.*" *See Kaman Precision Prods.*, 2010 WL 11626636, at *4 (emphasis added).[4]

For instance, take Relators' assertions concerning Alliance Health Partners, LLC d/b/a Merit Health Batesville. *See* Opp. 30; FAC Ex. B. at 1, no. 1. Exhibit B alleges that Merit Health Batesville submitted an attestation in seeking an incentive payment on February 4, 2016, attesting that the hospital complied with the Stage 2 objectives for "CPOE - Med," "CDS," "Protect PHI," and "Medicine Reconciliation." *Id.* But nothing in Exhibit B, or even in the entire Complaint, informs Merit Health Batesville what allegedly rendered its attestation false. Which aspect of these broad criteria did that hospital allegedly fail to meet? Why did Merit Health Batesville allegedly fail these criteria? Who at Merit Health was aware that the criteria were not met? Relators' Complaint alleges an assortment of software issues related to the CPOE criterion (*see* Opp. 16-17, 30; FAC ¶¶ 154, 157, 159, 162, 167, 173, 182), but never links any of those issues to Merit Health Batesville's 2016 Meaningful Use attestation. *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) (requiring that plaintiffs "link[] the . . . schemes to the submission of any actual claims").

Along with the CPOE criteria, Exhibit B also checks the column for "Protect PHI" for Merit Health Batesville. In fact, the "Protect PHI" column is checked for every Hospital Defendant. But again, there is no indication in the Complaint of any hospital's attestation relating to the security surrounding "protected health information." According to the Complaint, "[d]ue to [its] security vulnerabilities, Medhost was ineligible for certification" relating to PHI. FAC ¶ 253.

---

[3] Note that the "who" is totally absent here.

[4] Nor does Relators' other cited authority, *United States ex rel. Osheroff v. Tenet Healthcare Corp.*, offer cover for their utter failure to plead with particularity. 2012 WL 2871264 (S.D. Fla. July 12, 2012). In *Osheroff*, while the court found that the relator had sufficiently alleged the submission of actionable claims, it subsequently ruled that the relator had not pled with particularity that those claims were false in violation of the Anti-Kickback Statute and the Stark Law. *Id.* at *6-8.

But hospitals did not attest that the Medhost software was flawless without any "security vulnerabilities." And the Complaint nowhere alleges that the Hospital Defendants lied about the attestation required by Meaningful Use—namely, that the hospitals performed a security risk analysis and necessary software updates. *See* 42 C.F.R. § 495.6(f)(14)(ii), (l)(16)(ii) (2014). Instead, Relators allege only that "Medhost's EHR software failed to meet the [certification] requirements" for "Auditable Events and Tamper Resistance." FAC ¶¶ 248-54 (citing 45 C.F.R. § 170.314(d)(2)).[5] But Relators telling do not—and cannot—allege that any hospital attested to meeting this software certification criteria. The Complaint also does not identify a single hospital or hospital employee that was aware of the supposed problem with Medhost's securities capability. What's more, Merit Health Batesville is a Pulse hospital. Nowhere in their discussion of Pulse's supposed deficiencies do Relators allege any problems with the security of PHI.[6] *See id.* ¶¶ 258-80.

Rather than attempt to expand on Exhibit B and provide greater particularity regarding the alleged false attestations at the individual hospitals, the Opposition brief instead emphasizes the opposite—that the Hospital Defendants had ***no role*** in the alleged wrongdoing. An entire section of Relators' brief is entitled (in bold and all caps): "CHS Corporate Forced The Flawed Medhost Software Onto Its Hospitals." Opp. 24. Relators explain that "CHS's decision to use the Medhost software at certain of its hospitals was made at the CHS corporate level. It was a corporate directive; the selection of software vendors was not done at the hospital level." *Id.* Relators go on to describe how "a large team from CHS's corporate-level clinical operations and IT departments . . . implemented Medhost's EHR software at CHS hospitals." *Id.* In addition, "[t]he team charged with reporting Meaningful Use measures to CMS also was centralized at the CHS corporate level." *Id.* As a result, "responsib[ility] for the operational aspects of the Medhost

---

[5] Whether Medhost's software met the requirements for certification and *should have been* certified has no bearing on whether any Hospital Defendant truthfully attested that they used certified EHR technology. *See* CHSPSC Opening Br. 7-10; CHSPSC Reply Br. 2-7.

[6] Indeed, Relators abandoned their Pulse-related claims entirely by failing to offer any response to any of the arguments seeking dismissal of those claims. *See* CHSPSC Reply Br. 14 n.27.

Meaningful Use reporting tool [was] again at the CHS corporate level." *Id.* at 25. Relators leave no doubt that they believed that all aspects of the Meaningful Use attestation process were performed by CHS corporate:

> Relators contend that CHS was a Medhost corporate account, CHSI corporate selected which of its hospitals would receive Medhost software products as opposed to other vendors' products, CHSI corporate employees were responsible for the implementation of the Medhost software at the hospital level, and CHSI corporate employees then caused the hospitals to each individually attest to Meaningful Use to the Government.

*Id*. at 36.  *See also* FAC ¶¶ 12, 85-89, 91-92.

The False Claims Act punishes defendants who knowingly submit false claims with trebling and sizable penalties. Yet before a relator can go forward with such a claim, he must plead his fraud with particularity. Here, Relators allege that the submission of the Meaningful Use attestation was directed by "CHS corporate" and not by the Hospital Defendants. Their Complaint, accordingly, makes no effort to attribute any action relating to the attestations to the Hospital Defendants. *See* FAC ¶¶ 85-89. Absent allegations that each of the Hospital Defendants participated in the fraud, and given the utter lack of any of "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them," *Urquilla-Diaz*, 429 F.3d at 1051, the claims against the Hospital Defendants fail under Rule 9(b).

      B.    <u>Relators have not alleged any facts to support a plausible inference of fraudulent intent for each Hospital Defendant</u>

As a threshold matter, Relators are wrong to suggest that questions of scienter are inappropriate to assess on a motion to dismiss. *See* Opp. 65. Fraudulent intent must be adequately pled and supported by factual allegations that are "plausible on [their] face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And while "scienter [may] be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Viera v. BASF Catalysts LLC*, 2016 WL 1394333, at *3 (M.D. Fla. Apr. 8, 2016) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936

5

F.2d 674, 676 (2d Cir. 1991)) (granting motion to dismiss fraud claim); *see also* Hospitals' Opening Br. 15-16, 16 n.9 (collecting cases).[7]

Like their Complaint, Relators' Opposition brief does not even attempt to present facts that would indicate scienter on the part of each of the Hospital Defendants. There is no effort to identify which employees at the individual hospitals were aware that the Meaningful Use attestations were false, nor is there any effort to set out the facts from which wrongful knowledge, deliberate ignorance, or reckless disregard by specific hospital personnel could be plausibly inferred. *See* 31 U.S.C. § 3729(b)(1). Instead, the entirety of the Opposition brief's argument on scienter is that the Complaint is sufficient because it alleges that "[s]oon after the Medhost rollout began, doctors and hospital administrators began to report that the updated Medhost software was not able to perform required functions accurately and reliably." Opp. 68.[8] Yet this single sentence does not allege any facts from which one could plausibly infer wrongful intent as to any Hospital Defendant. Which doctors and hospital administrators *at which hospitals*? When? With which functions were they reporting software problems? Are these functions required for attestation? Were the software problems fixed before attestation by the hospital? This amorphous allegation regarding unnamed doctors and unnamed hospital administrators at unidentified hospitals is the quintessential unsupported, vague, and conclusory assertion that does not survive even Rule 8.

As discussed above, Relators contend that "CHS corporate" directed and executed all aspects of the Meaningful Use program. *See supra* 4-5. Consistent with that theory, the Complaint

---

[7] Relators also assert that "none of the motions to dismiss are brought under Rule 8." Opp. 39. This is simply incorrect. *See* Hospitals' Opening Br. 1, 7 (seeking dismissal pursuant to Rule 8(a)).

[8] The Opposition brief goes on to contend that "Relators also provide examples to support this allegation." Opp. 68. Yet, the two paragraphs cited in the Opposition, FAC ¶¶ 90-91, contain two emails from two doctors at a single hospital expressing frustration with the pace of the Medhost rollout process at their hospital (Deaconess) in July 2014. It is not clear that the doctors' issues related in any way to functions necessary for attestation. And that one hospital did not even submit its Meaningful Use attestation until five months later. *See* FAC Ex. B. at 8, no. 31. Moreover, it is hard to understand how the physicians' complaints regarding the 2014 Medhost rollout could render false or create a plausible inference of scienter for the 2013 Meaningful Use attestation or the 2016 attestation at that hospital.

6

entirely lacks allegations that any of the employees at a single individual hospital were aware that there was anything false in the Meaningful Use attestations. In the absence of such allegations, the Complaint against the Hospital Defendants must be dismissed for failure to allege scienter.

C. Relators' conclusory assertions of a wheel conspiracy-like fraud do not excuse their failure to plead fraud with particularity

Having named 140 separate Hospital Defendants but unable to make out a fraud claim against a single one, Relators suggest that their pleading is somehow exempt from the requirements of particularity that Rule 9(b) imposes. They argue that their group pleading is permissible because "CHSI, the Hospital Defendants, and CHSPSC engaged in a wheel conspiracy-like fraud." Opp. 38.[9] But conclusorily invoking a 'wheel conspiracy-like fraud' is not some sort of free pass allowing Relators to blithely bypass Rule 9(b).

Relators' single point of legal authority, *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667 (9th Cir. 2018), cannot bear the weight that Relators place on it. The Ninth Circuit's holding with respect to pleading fraud in the context of conspiracy has not been adopted by any other circuit. Moreover, *Silingo* runs directly counter to a slew of appeals and district court decisions in this circuit which emphasize the importance of pleading the specifics of the fraud as to each individual defendant. *See, e.g.*, *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F. 3d 1364, 1381 (11th Cir. 1997); *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007);[10] *United States ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 F. Supp. 3d

---

[9] Contrary to Relators' contention, *see* Opp. 39, their Complaint is a "shotgun pleading" subject to dismissal under Rule 8 because it is "*virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief," *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015). By filling their Complaint with allegations about the conduct of "CHS" or "hospitals," Relators make it impossible for any Hospital Defendant to know which allegations are being asserted against it.

[10] Remarkably, Relators claim (citing no authority) that *Ambrosia* and *Brooks* can be disregarded because they addressed RICO claims and "neither has any import for claims brought under the FCA." Opp. 41 n.11. That would be news to the dozens of judges that have relied on *Ambrosia* and *Brooks* to dismiss inadequately pled FCA claims. *See, e.g.*, *Choudhry*, 2016 WL 7228760, at *3 (citing *Ambrosia*); *United States ex rel. Graves v. Plaza Med. Ctrs. Corp.*, 2014 WL 5040284, at *2 (S.D. Fla. Oct. 8, 2014) (citing *Brooks*); *United States ex rel. Jallali v. Sun Healthcare Grp.*,

1316, 1328 (M.D. Fla. 2017); *United States v. Choudhry*, 2016 WL 7228760, at *3 (M.D. Fla. Oct. 11, 2016). In the Eleventh Circuit, Relators' undifferentiated allegations against multiple defendants constitute impermissible group pleading and fail under Rule 9(b).

Even if this Court were to follow *Silingo*, however, it would not excuse Relators' deficient pleading here. In the first place, Relators entirely fail to plead a conspiracy of any sort. "Conspiracy" is not a talisman, the mere recitation of which relieves Relators of their pleading obligations. Just like any other fraud allegation, claims of fraudulent conspiracy must be supported by "specific allegations" of an "agreement" to submit false claims and "overt acts" in support of that agreement. *Corsello*, 428 F.3d at 1014; *see also United States ex rel. Stepe v. RS Compounding LLC*, 304 F. Supp. 3d 1216, 1227-28 (M.D. Fla. 2018). Relators do not even attempt to plead with the requisite particularity—they "fail to allege any terms of the [supposed] conspiracy agreement, who entered the agreement, or when the conspiracy was formed." *United States ex rel. Loveland v. Medco Health Sols., Inc.*, 2010 WL 11444153, at *3 (S.D. Fla. July 21, 2010).[11] In short, there are **no facts** supporting a conspiracy between CHSI or CHSPSC and any of the Hospital Defendants. There can be no wheel-and-spoke conspiracy if, in fact, the Hospital Defendants never entered into a conspiracy.

Secondly, the court in *Silingo* specifically distinguished between "a fraud suit against differently situated defendants" who "engage in different wrongful conduct," on the one hand, and a suit against defendants "that had the *exact same role* in a fraud." *Silingo*, 904 F.3d at 677 (emphasis added). The court described a wheel conspiracy as one in which "multiple defendants . . . are alleged to have engaged in *precisely the same conduct*" or "to have committed *the same wrongful acts*." *Id.* (emphasis added). It is only in those circumstances involving

---

2015 WL 10687577, at *3 (S.D. Fla. Sept. 17, 2015) (citing *Brooks*), *aff'd*, 667 F. App'x 745 (11th Cir. 2016); *McFarland*, 358 F. Supp. 3d at 1328 (citing both).

[11] Nor does the mere fact that the Hospital Defendants submitted attestations provide the necessary inference of a conspiracy to defraud—that is precisely the type of allegation that *Twombly* found to be insufficient because it was "merely consistent with" rather than "plausibly suggesting" an illegal conspiracy. 550 U.S. at 557.

multiple defendants engaged in precisely the same conduct that the Ninth Circuit allowed the relator to plead using collecting allegations against multiple defendants.

Here, by contrast, the Hospital Defendants are not alleged to have engaged in the same conduct. Relators themselves acknowledge that Meaningful Use had different stages with very different technical requirements. *See* FAC ¶¶ 55-60. Relators also allege that the different Hospital Defendants used different software, with some using Medhost and others using Pulse. *Id.* ¶¶ 12-13, 22. Relators also note that even the Hospital Defendants using Medhost software often used different versions. As a result, Relators concede that the hospitals attested to different stages of Meaningful Use at different times using different software. *See* FAC Ex. B. The Complaint also references emails and statements by personnel from a tiny handful of hospitals, while the vast majority of Hospital Defendants are never mentioned in the Complaint. *See* FAC ¶¶ 90-91, 119, 121, 158-59, 172, 182-83, 187-90, 276-80 (referring to just eight out of 140 hospitals).

This is not a case where the "spokes" of a wheel are "alleged to have engaged in precisely the same conduct." *Silingo*, 904 F.3d at 678. Relators have barely alleged any conduct by the Hospital Defendants at all, much less that that conduct is the same across all Hospital Defendants. Accordingly, even to the extent that it is good law in this circuit, *Silingo* would not allow Relators to escape the requirement under Rule 9(b) that they plead fraud with particularity because Relators are unable to demonstrate that the 140 hospitals engaged in "precisely the same conduct." *See Ryan v. Salisbury*, 2019 WL 2121518, at *10 (D. Haw. May 14, 2019) (rejecting plaintiff's wheel conspiracy argument where two defendants employed by a third "at different, nonconcurrent times" did not engage in the "exact same acts of concealment").[12]

---

[12] At best, Relators' argument might be that each Hospital Defendant was in its own vertical conspiracy with CHS at the corporate level—forming a so-called "rimless wheel" of 140 individual "spokes" with no connection to or awareness of each other. Such "rimless wheel" conspiracies are not adequately pled as conspiracies at all. *See, e.g.*, *United States v. Chandler*, 388 F.3d 796, 807-08 (11th Cir. 2004).

9

Case No. 18-20394-CIV-Scola/Torres

## CONCLUSION

For the foregoing reasons and those outlined in the Hospital Defendants' opening brief, the Complaint should be dismissed with prejudice as against each of the Hospital Defendants.

Dated: November 7, 2019

Respectfully submitted,

By: /s/ Martin B. Goldberg
    Martin B. Goldberg

LASH & GOLDBERG LLP
Martin B. Goldberg
Florida Bar No. 0827029
Daryl L. Saylor
Florida Bar No. 100376
100 Southeast 2nd Street, Suite 1200
Miami, FL 33131-2158
Telephone: (305) 347-4040
Facsimile: (305) 347-4050
mgoldberg@lashgoldberg.com
dsaylor@lashgoldberg.com

ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
Michael L. Waldman (*pro hac vice*)
Brandon L. Arnold (*pro hac vice*)
Lauren M. Cassady (*pro hac vice*)
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
mwaldman@robbinsrussell.com
barnold@robbinsrussell.com
lcassady@robbinsrussell.com

*Counsel for Hospital Defendants*

Case No. 18-20394-CIV-Scola/Torres

# CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on November 7, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Martin B. Goldberg
Martin B. Goldberg

**SERVICE LIST:**

Jeffrey W. Dickstein (FL Bar No. 434892)
PHILLIPS & COHEN LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 2790
Miami, Florida 33131
Tel: (305) 372-5200
jdickstein@phillipsandcohen.com

Colette G. Matzzie (admitted *pro hac vice*)
Luke J. Diamond (*pro hac vice* anticipated)
PHILLIPS & COHEN LLP
2000 Massachusetts Avenue,
NW Washington, DC 20036
Tel: (202) 833-4567
cmatzzie@phillipsandcohen.com

Edward H. Arens (admitted *pro hac vice)*
PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300 San Francisco, CA 94105
Tel: (415) 836-9000
earens@phillipsandcohen.com

David J. Chizewer (*pro hac vice* anticipated)
David E. Morrison (admitted *pro hac vice*)
Harleen Kaur (*pro hac vice* anticipated)
Danielle K. Johnson (*pro hac vice* anticipated)
Juan C. Arguello (*pro hac vice* anticipated)

GOLDBERG KOHN LTD.
55 E. Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 201-4000
Fax: (312) 863-7472
David.Chizewer@goldbergkohn.com
David.Morrison@goldbergkohn.com
Harleen.Kaur@goldbergkohn.com
Danielle.Johnsons@goldbergkohn.com
Juan.Arguello@goldbergkohn.com